**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0793-24

KARL HALLIGAN,

     Plaintiff-Appellant,

v.

BEDERSON, LLP, SEAN RAQUET,
CPA, CFE, JOHN O'CONNOR
and HARRY HODKINSON,

     Defendants-Respondents.

_____

Argued March 17, 2026 – Decided July 15, 2026

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1494-19.

Steven L. Menaker argued the cause for appellant (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Steven L. Menaker, on the briefs).

Henry Lockwood Miller, III argued the cause for respondents Bederson, LLP, and Sean Raquet (Goldberg Segalla LLP, attorneys; Henry Lockwood Miller, III, of counsel and on the brief).

PER CURIAM

This appeal arises from the summary judgment dismissal of plaintiff Karl Halligan's Law Division complaint against defendants Bederson, LLP, and its principal, Sean Raquet, CPA, CFE (together, Bederson defendants). In his January 11, 2019 complaint, plaintiff sought damages for alleged misconduct during prior litigation with plaintiff's former partners, defendants John O'Connor and Harry Hodkinson.[1] In particular, plaintiff appeals from a July 12, 2024 order granting the Bederson defendants' motion to reconsider an April 26, 2024 order, which denied their summary judgment motion, and a September 4, 2024 order denying plaintiff's motion to reconsider the July 12, 2024 order. We affirm all orders under review.

I.

The facts underlying plaintiff's dismissed complaint are straightforward; the procedural history is protracted. We highlight the pertinent facts and events from the motion record in a light most favorable to plaintiff as the non-moving

---

[1] On November 7, 2024, default judgment was entered against O'Connor and, on September 11, 2024, plaintiff consented to the dismissal of his claims against Hodkinson. Accordingly, O'Connor and Hodkinson are not parties to this appeal.

A-0793-24

party.  See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## A.  Prior Litigation

In 2004, plaintiff and his former partners formed H&H Real Estate Investments, LLC (H&H), which owned commercial property in Union City, and Park Avenue Bar & Grill, LLC (PAB&G), which operated a bar and restaurant on the property.  Plaintiff was the managing member of H&H and PAB&G (together, LLCs).

Within a few years, the relationship between plaintiff and his former partners soured.  In April 2012, plaintiff filed a complaint against O'Connor and Hodkinson in the Law Division, seeking compensation and other relief (initial Law Division action).  In their answer, plaintiff's former partners asserted affirmative defenses and a counterclaim seeking, among other relief, dissociation of plaintiff from both LLCs.

Following a multi-day bench trial, on January 17, 2014, the trial judge entered judgment in favor of plaintiff on his request for payment of equity compensation and manager's salary, and reimbursement of paid taxes.  The judgment also granted the former partners' request to dissociate plaintiff.  A modified judgment was issued on March 18, 2014, awarding plaintiff

3

$793,772.50 solely against the LLCs, jointly and severally, even though the LLCs were not parties to plaintiff's complaint.[2]

The next month, in the bankruptcy court, Bruce Levitt, Esq., filed a voluntary petition for PAB&G's reorganization under Chapter 11 of the United States Bankruptcy Code (bankruptcy proceeding). See 11 U.S.C. §§ 1101-1195. In the petition, plaintiff was listed as a creditor.

In October 2014, Andrew Turner, Esq., who had represented O'Connor and Hodkinson in the initial Law Division action, introduced via email his former clients and the Bederson defendants. In the email, Turner recommended the Bederson defendants provide PAB&G forensic accounting services in the bankruptcy proceeding.

The following month, O'Connor emailed Raquet, disclosing the former partners found evidence of plaintiff's "unauthorised [sic] payments," presumably from PAB&G's bank account on various personal expenses, including rent payments for plaintiff's girlfriend, sports tickets, vehicles, school tuition payments, and various other entertainment and goods. O'Connor thereafter forwarded to Raquet bank statements purportedly demonstrating plaintiff's

---

[2] On August 20, 2014, the modified judgment was recorded as a lien.

A-0793-24

improper spending. Raquet agreed to prepare a forensic report (Bederson Report), noting O'Connor would "get twice the use for one report" – in the initial Law Division action and bankruptcy proceeding. In the Bederson Report, Raquet concluded plaintiff misappropriated between $1,490,000 and $1,820,000 of PAB&G's funds.

In December 2014, PAB&G's Chapter 11 petition was converted to a Chapter 7 liquidation. See 11 U.S.C. § 1112(b). Following his appointment, the Chapter 7 trustee retained the Bederson defendants as PAB&G's forensic accountant. Thereafter, the trustee filed an adversary complaint against plaintiff on PAB&G's behalf. Relying on the Bederson Report, the trustee sought to recover from plaintiff $519,612.21 for his fraudulent transfers from PAB&G's funds. The parties settled the trustee's claims against plaintiff for $25,000. In April 2016, the bankruptcy court authorized the settlement agreement.

Meanwhile, in November 2014, the former partners moved in the initial Law Division action to vacate a portion of the March 18, 2014 modified judgment contending the LLCs were not parties to the lawsuit. Agreeing, the trial judge concluded he "mistakenly entered judgment for . . . [p]laintiff and against [the LLCs]." On April 6, 2015, the judge vacated the judgment against the LLCs and permitted plaintiff to amend his complaint to add the LLCs as

A-0793-24

parties. In support of their motion to vacate, the former partners annexed the Bederson Report asserting plaintiff lied about the compensation he received from the LLCs.

In August 2015, plaintiff filed a revised first amended complaint against H&H (second Law Division action).[3] Thereafter, a dispute arose concerning the parties' legal representation. In August 2017, another judge granted plaintiff's motion to disqualify H&H's attorney. The judge also disqualified Turner from representing O'Connor and Hodkinson. We granted O'Connor leave to appeal from the order disqualifying Turner's representation and affirmed. Halligan v. O'Connor, No. A-0819-17 (App. Div. Oct. 5, 2018) (slip op. at 14).

Relevant here, in his self-represented certification in opposition to O'Connor's appeal, Hodkinson discussed his and O'Connor's role in the Bederson Report's creation. Hodkinson revealed, to avoid "a large bill," the former partners told Turner and Raquet "we would do all the work and research and simply supply what we fe[lt] was damming [sic] and selective evidence against [plaintiff] and use the Bederson company name as an official seal of the report in order to give it credibility within the court system."

---

[3] In the revised complaint, plaintiff also named his former partners "for consistency in pleading, but no claims [we]re asserted against them."

A-0793-24

Hodkinson elaborated:

> So we engaged Bederson LLC in early November, I supplied everything and effectively wrote the entire report 100% and gave it to Bederson LLC to present it the way he would for the courts. The report was compiled by me over ten weeks based on 100% of my work. We engaged Bederson for a token fee of 10K - Bederson never visited the location and simply took my report and spreadsheets and revamped the numbers and then . . . Turner certified it was true and accurate despite knowing it wasn't a forensic report and basically compiled by me. I'm not an accountant but I did my best compiling what I believed was financial information, and Bederson only had a few weeks (less than 10 days) to give us a report.
>
> Once received[, Turner] filed his motion . . . and this report was to be used in the bankruptcy court a[s] well as State court to try to vacate [plaintiff]'s judg[]ment awarded during the trial and what we had been fighting for months. . . . Turner was very successful in getting the [t]rustee in Chapter 7 to file a complaint against [plaintiff] based on this report, but when the trustee investigated further they settled with [plaintiff] based on the lack of credibility of the report. . . . Turner th[e]n resubmitted this report to the State court with the same objective which was from the very beginning to erase [plaintiff]'s [j]udg[]ment permanently.

In May 2019, in the second Law Division action, the present motion judge issued a $644,609.27 judgment in favor of plaintiff and against H&H.

A-0793-24

## B. Present Litigation

The previous month, in April 2019, plaintiff filed the present litigation. In the first count of his complaint, plaintiff asserted "Accountant's Professional Malpractice" against the Bederson defendants; in the second count, plaintiff claimed "Intentional Fraud and Misrepresentation" against all defendants. Among other relief, plaintiff sought damages for the $793,772.50 vacated judgment in the initial Law Division action and $25,000 settlement in the bankruptcy proceeding.

In their answer, the Bederson defendants filed a cross-claim and affirmative defenses. In their tenth affirmative defense, the Bederson defendants asserted: "The Bederson Report is entitled to a qualified privilege."

Discovery ensued. Following the exchange of paper discovery, the parties deposed party and fact witnesses, including, Raquet, Hodkinson, Turner, Levitt, and the bankruptcy trustee. The parties also participated in court-ordered mediation, but were unable to resolve their dispute.

Relevant here, at deposition, Hodkinson testified consistently with his certification quoted above. In essence, Hodkinson claimed the former partners decided he would "basically do the report" and Raquet agreed he "would just put his name to it and we would have a forensic report." Hodkinson "seriously

A-0793-24

doubt[ed]" Raquet "reviewed the general ledgers for" PAB&G. Instead, "[Raquet] just took [Hodkinson's] data and put it in the report." When Hodkinson received the Bederson Report, he told his wife: "Look at this, he copied it verbatim. He did nothing. Didn't even change [one of the charges]. He just put his name and got $10,000" as his fee.

When deposed, Raquet testified to a different version of events. He claimed Hodkinson delivered bank statements, cancelled checks, and an Excel file containing "a listing of checks and ACH, or debt memos or withdrawals from the bank statements to vendors that [Hodkinson] felt were suspicious in nature" and made for plaintiff's benefit. Raquet said he gave the materials to his associate and instructed her to compare PAB&G's bank statements with Hodkinson's spreadsheet. Raquet stated he did not ask Hodkinson why he believed certain transactions were suspicious and removed certain charges from Hodkinson's list after determining they were legitimate business charges. Raquet acknowledged he did not speak with PAB&G's bookkeeper, accountant, or plaintiff regarding the entries in the Bederson Report.

Trial was scheduled for May 3, 2021, but adjourned several times in light of the COVID-19 pandemic and scheduling conflicts. Ultimately, trial was scheduled for January 22, 2024.

9

Ten days prior to the trial date, on January 12, 2024, the Bederson defendants moved for summary judgment seeking dismissal of plaintiff's complaint.[4] Recognizing their dispositive motion was untimely, the Bederson defendants simultaneously sought a short adjournment of the trial date. To support their application, the Bederson defendants claimed while preparing for trial, this court issued an unpublished decision holding for the first time "the litigation privilege/litigation immunity enjoyed by attorneys, witnesses, and experts in judicial proceedings" applied to fraud claims.

During oral argument before the motion judge, plaintiff's counsel asserted the motion was untimely filed. See R. 4:46-1 (requiring, in pertinent part, summary judgment motions to "be returnable no later than 30 days before the scheduled trial date, unless the court otherwise orders for good cause"). As to the merits, plaintiff's counsel countered the crime fraud exception applied – although he acknowledged the lack of precedential authority to support his claim.

In his oral decision, the motion judge was unpersuaded by the Bederson defendants' reliance on an unpublished case citing instead our decision in

---

[4] In their pretrial submission that followed, the Bederson defendants moved in limine to preclude at trial their communications under the litigation privilege doctrine.

10

Commercial Insurance Company of Newark v. Steiger, 395 N.J. Super. 109 (App. Div. 2007). But having adjourned the trial date, the judge determined the timeliness issue was moot. The judge further found Raquet authored the report as an expert witness during litigation and, as such, the litigation privilege applied. However, the judge declined to grant judgment as a matter of law, finding the question of "who was responsible for misleading the court" was a jury determination.

The Bederson defendants moved for reconsideration, arguing plaintiff failed to satisfy the elements of his fraud claim. For the first time in his responding certification, plaintiff's counsel noted the Bederson defendants "never sought to dismiss the case based on the litigation privilege" until they moved for summary judgment. Plaintiff therefore argued the Bederson defendants waived the litigation privilege.

In his oral decision, the motion judge acknowledged plaintiff did not raise his waiver argument until he opposed the reconsideration motion, but nonetheless addressed the issue on the merits. Noting the absence of "case law or statutory law on a waiver of the litigation privilege," the judge rejected plaintiff's argument that waiver was warranted under the same theory underlying waiver of a statute of limitations or arbitration provision.

A-0793-24

Persuaded by the Bederson defendants' argument on reconsideration, the motion judge found plaintiff failed to meet the five elements of his common law fraud claim. In particular, the judge found "[t]he [Bederson] defendants did not intend for . . . plaintiff to rely on the report." Rather, the Bederson Report was prepared "for the purposes of the bankruptcy court . . . trustee." Thus "the bankruptcy proceeding, not . . . plaintiff relied on the report." Finding plaintiff failed to establish a prima facie fraud claim, the judge did not reach his crime fraud exception argument. The judge therefore granted reconsideration and dismissed plaintiff's complaint.

Plaintiff then moved for reconsideration. Citing our decision in Hill v. New Jersey Department of Corrections Commissioner Fauver, 342 N.J. Super. 273 (App. Div. 2001), plaintiff maintained the Bederson defendants failed to timely assert the litigation privilege. During colloquy with the motion judge, plaintiff's counsel claimed his fraud on the court claim could not have been asserted in the initial Law Division action or the bankruptcy proceeding because plaintiff did not discover how the Bederson Report was created until well after both matters had concluded. Declining to disturb his prior decision, the motion judge essentially reiterated plaintiff failed to establish the elements of common law fraud or that his fraud on the court claim was cognizable in this action.

On appeal, plaintiff challenges the reconsideration orders under Rule 4:49-2, reprising the same contentions asserted before the motion judge. Accordingly, plaintiff argues the Bederson defendants cannot avail themselves of the litigation privilege and his complaint must be reinstated.

II.

As a threshold matter, plaintiff cites the wrong reconsideration Rule. Unlike reconsideration motions to alter or amend final judgments and final orders, which are governed by Rule 4:49-2, a motion for reconsideration of an interlocutory order – as was the dismissal order here – is governed by the "far more liberal approach" set forth in Rule 4:42-2. Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021). "Rule 4:42-2 declares that interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Ibid. (quoting R. 4:42-2). We have long held a trial court may reconsider and vacate an interlocutory order if the court determines the matter was decided incorrectly. See Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987) (holding a "trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment").

A-0793-24

A.

Notwithstanding its terminology, the "litigation privilege" is not considered a privilege under the New Jersey Rules of Evidence. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 500 (2025-26) (explaining the litigation "doctrine is actually an immunity rather than a privilege, although the result is likely to be the same"); Pressler & Verniero, Current N.J. Court Rules, cmt. 20.3.5 on R. 4:5-4 (2026) (stating the litigation privilege "is an absolute privilege" and, as such, "non-actionab[le], afforded to statements made in the course of judicial and quasi-judicial proceedings").

Indeed, "[i]t is well-settled that a witness in a judicial or quasi-judicial proceeding enjoys an absolute immunity from civil suit for his words and actions relevant to the judicial proceedings." Durand Equip. Co. v. Superior Carbon Prods., Inc., 248 N.J. Super. 581, 583 (App. Div. 1991); see also Rainer's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 564 (1955). "[A]bsolute immunity is not limited to what a person may say under oath while on the witness stand," but "extends to statements or communications in connection with a judicial proceeding." Durand, 248 N.J. Super. at 584 (alteration in original) (internal quotation marks omitted) (quoting DeVivo v. Ascher, 228 N.J. Super. 453, 457 (App. Div. 1988)). Relevant here, the litigation privilege has been extended to

A-0793-24

experts who provide reports for the purposes of litigation. See Com. Ins. Co. of Newark, 395 N.J. Super. at 119.

In the present matter, plaintiff does not dispute the Bederson Report falls within the litigation privilege. Instead, plaintiff maintains the Bederson defendants waived the privilege by failing to "assert[] litigation privilege as an affirmative defense in their [a]nswer" and "conduct[ing] prolonged litigation for more than four years" before doing so. To support his argument, plaintiff again cites our decision in Hill and Lightning Lube v. Witco Corp, 4 F.3d 1153 (3d Cir. 1993), cited in Hill.

Unlike the Bederson defendants in the present matter, the defendant teachers in Hill raised the litigation privilege for the first time on appeal, following a jury trial on their supervisor's action for various tort claims. 342 N.J. Super. at 293. We stated, "The litigation privilege may be waived if not raised at trial." Id. at 294 (emphasis added); see also Lightning Lube, 4 F.3d at 1197 (finding the defendant waived the litigation privilege because "it never objected to testimony [at trial] regarding [its] counterclaim").

Conversely, here, the Bederson defendants asserted the litigation privilege prior to the commencement of trial. On de novo review, see Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013), we discern no error in the motion

15

judge's conclusion that the Bederson defendants did not waive the litigation privilege.

B.

We turn to plaintiff's argument that the Bederson Report constituted "a fraud upon both the bankruptcy and state courts," and the crime fraud exception prohibits application of the litigation privilege. Similar to the motion judge, we are convinced plaintiff failed to establish a prima facie fraud claim. Accordingly, we need not decide whether the crime fraud exception applies here.

Initially, we reject plaintiff's contention that the motion judge erroneously misinterpreted plaintiff's fraud claim as common law fraud rather than fraud upon the court. The parties have not cited, and our independent research has not revealed, any authority supporting plaintiff's cause of action in the present matter for fraud upon the court in the initial Law Division action and bankruptcy proceeding.

Instead, we have recognized "the trial court possesses inherent power to sanction a fraud on the court." Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 253 (App. Div. 2007). As the motion judge noted here, plaintiff failed to seek recourse before the trial judge in the initial Law Division action or with the trustee in the bankruptcy proceeding. See R. 4:50-3 (empowering "a

16

court to set aside a judgment, order or proceeding for fraud upon the court or to entertain an independent action to relieve a party from a judgment, order or proceeding"). Thus, the only remedies for fraud upon the court in a prior proceeding are relief from judgment or an award of sanctions – in the prior proceeding. A private cause of action for fraud on the court in a subsequent proceeding is not cognizable.

Similar to the motion judge, we therefore analyze plaintiff's common law fraud claim in view of its essential elements. To establish a claim of common law fraud, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). Importantly, "fraud is never presumed." Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003). Instead, a plaintiff "must prove each element by 'clear and convincing evidence.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013) (quoting Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989)).

A-0793-24

Based on our review of the record, we are satisfied plaintiff failed to proffer clear and convincing evidence of elements two, three, and four. As the Bederson defendants maintain, the record is devoid of any evidence: they "knew or believed that the Bederson Report contained false information"; they "intended for [plaintiff] to rely on the Bederson report"; or plaintiff relied on the report.

In summary, pursuant to the Rule 4:42-2 standard, we discern no error in the motion judge's reconsideration decisions. On de novo review, see Samolyk v. Berthe, 251 N.J. 73, 78 (2022), we further conclude, as did the motion judge on reconsideration, the record "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law," R. 4:46-2(c).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-0793-24